UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

XIN KAI YU,

    Petitioner,

v.

KRISTI NOEM et al.,

    Respondents.
_____/

Case No. 1:26-cv-263

Honorable Jane M. Beckering

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled combined petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

**I.     Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 3, PageID.10.)

In an Order entered on January 26, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner

should not be granted. (Order, ECF No. 3.) Respondents filed their response on January 29, 2026 (ECF No. 4), and Petitioner filed his reply on February 2, 2026 (ECF No. 5).

## II.  Relevant Factual Background

"Petitioner is a native and citizen of the People's Republic of China." (Pet., ECF No. 1, PageID.1; Anderson Decl. ¶ 4, ECF No. 4-1, PageID.25.) Petitioner entered the United States without inspection at some point between 1999 and 2000. (Pet., ECF No. 1, PageID.1.) "Petitioner was ordered removed by an immigration judge in 2005," and the Board of Immigration Appeals (BIA) "denied Petitioner's appeal and entered a final order of removal in 2007." (*Id.*; Anderson Decl. ¶¶ 9–13, ECF No. 4-1, PageID.26.) Petitioner was not removed from the United States at that time. (*See* Pet., ECF No. 1, PageID.2; Anderson Decl. ¶ 14, ECF No. 4-1, PageID.27.)

On June 17, 2025, United States Border Patrol (USBP) agents took Petitioner into custody "at a weigh station, while he was working as a truck driver." (Pet., ECF No. 1, PageID.2; Anderson Decl. ¶ 14, ECF No. 4-1, PageID.27.)

"On August 10, 2025, Detroit [Enforcement and Removal Operations (ERO)] submitted a Travel Document Request . . . on behalf of [Petitioner] to ICE Headquarters." (Anderson Decl. ¶ 17, ECF No. 4-1, PageID.27.) "On September 12, 2025 Detroit ERO conducted a 90-day Post Order Custody Review," and Petitioner's detention was continued because "ICE ERO is awaiting issuance of a travel document from China . . . and [it] is expected to issue but historically can be prolonged and is currently pending." (*Id.* ¶ 18.) "On October 27, 2025, ICE Headquarters stated that [Petitioner's travel document request] was pending identification verification with the Chinese embassy." (*Id.* ¶ 19.)

"In October 2025, Petitioner attempted to reopen his proceedings before the [BIA], but the motion to reopen was denied on October 31, 2025." (Pet., ECF No. 1, PageID.4.) "On November 25, 2025, ICE Headquarters nominated [Petitioner] for a Special High-Risk Charter . . . removal

flight." (Anderson Decl. ¶ 20, ECF No. 4-1, PageID.28.) On December 13, 2025, Petitioner's "flight to China was cancelled because he did not have a travel document." (*Id.* ¶ 23)

"On January 8, 2026, ICE Headquarters submitted an updated [travel document request] to the Chinese Embassy." (*Id.* ¶ 24.) "On January 27, 2026, Detroit ERO submitted a 180-day panel memorandum through their chain of command with a recommendation to continue detention" based on their determination that "a significant likelihood of removal in the reasonably foreseeable future exists." (*Id.* ¶ 25.) The "memorandum is currently pending supervisory approval." (*Id.*)

### III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV. Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Resp., ECF No. 4, PageID.18–20; Pet., ECF No. 1, PageID.5–7.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.8–10.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 4, PageID.18–20.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 2007. The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[1] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, Petitioner was taken into custody by ICE on June 17, 2025, and as of December 17, 2025, Petitioner had been in custody for six months. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because he has had a final order of removal since 2007, and Respondents continue to be unable to remove Petitioner, as

---

[1] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

4

demonstrated by Respondents' inability to remove Petitioner on December 13, 2025, due to the lack of a required travel document. Respondents assert that following the failed attempt on December 13, 2025, to remove Petitioner, "ICE Headquarters submitted an updated [travel document request] to the Chinese Embassy" on January 8, 2026. (Anderson Decl. ¶ 24, ECF No. 4-1, PageID.28.) Respondents do not indicate that they have received anything from the Chinese Embassy as of the date they filed their response, and Respondents acknowledge that the process "historically can be prolonged." (*Id.* ¶ 18, PageID.27.)

The Court concludes that the fact that the government was recently unable to provide a travel document to effect removal on a special charter flight and that the government has not received the required documentation from China despite at least two requests for such documentation provides "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents' sole evidence is the assertion that after the failed attempt to remove Petitioner on December 13, 2025, "ICE Headquarters submitted an updated [travel document request] to the Chinese Embassy" on January 8, 2026. (Anderson Decl. ¶ 24, ECF No. 4-1, PageID.28.) As noted above, Respondents do not indicate that they have received anything from the Chinese Embassy as of the date they filed their response, and Respondents acknowledge that the process "historically can be prolonged." (*Id.* ¶ 18, PageID.27.) Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V.     Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the United States Secretary of Homeland Security as a Respondent. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the Detroit ICE Field Office Director and the Secretary for the Department of Homeland Security as Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions of release that existed prior to Petitioner's present detention. The Court will also order Respondents to file a status

report within five days of the date of this Court's Opinion and Judgment to certify compliance with this Opinion and the corresponding Judgment.


Dated:     February 9, 2026                              /s/ Jane M. Beckering
                                                                                         Jane M. Beckering
                                                                                         United States District Judge